# United States Court of Appeals
## For the First Circuit

No. 06-2354

$O5 CR30055-MHP$

UNITED STATES OF AMERICA,

Appellee,

v.

CHRISTOPHER WARD,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lipez and Howard, Circuit Judges,
and Oberdorfer,' Senior District Judge.

Chauncey B. Wood, with whom Shea, Larocque & Wood, was on brief, for appellant.
Steven H. Breslow, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, and Randall E. Kromm, Assistant United States Attorney, was on brief, for appellee.

February 29, 2008

_____

'Of the District of the District of Columbia, sitting by designation.

**LIPEZ, Circuit Judge.** Focusing on deficiencies in a state court plea colloquy on the issue of voluntariness, Christopher Ward challenges on appeal his sentence of 120 months in prison for several drug-related convictions. Ward argues that his sentence is unreasonable as a matter of law because the district court relied on unconstitutional prior state convictions as the basis for a mandatory sentence enhancement under 21 U.S.C. § 841(b)(1)(A). In assessing this claim, we must consider the decision of the Supreme Court in Boykin v. Alabama, 395 U.S. 238 (1969), which held that the acceptance of a plea of guilty "must be based on a 'reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant.'" Id. at 242 (quoting Jackson v. Denno, 378 U.S. 368, 387 (1964)). Boykin also held that "[w]e cannot presume a waiver of these . . . important federal rights from a silent record." Id. at 243.

After considering Boykin and cases decided in its wake, we conclude that the record of the state court proceeding in this case contained sufficient evidence to permit the district court to find that Ward entered his state plea voluntarily, and hence the mandatory sentence enhancement applied.

**I.**

We recite Ward's background from the Presentence Report prepared in conjunction with his federal sentencing. The facts are

-2-

largely undisputed, and we specifically note where Ward contests the statement of facts offered in the report.

Ward was born in 1986 to a mother who had been using cocaine and methadone. Hospital records reveal positive tests for cocaine, barbiturates, and hepatitis B antibodies on his umbilical cord. At eighteen months, Ward was adopted by Mary Little, whom he believes is a relative of his mother. Ward has not remained in contact with his birth mother, and believes that she died in 2003 from complications related to AIDS; in addition, he does not know his father. Raised in the Mason Square area of Springfield, Massachusetts, a low-income neighborhood plagued by violence, drugs, and gangs, Ward was arrested at age sixteen for receiving a stolen motor vehicle, a charge that was subsequently dropped by the authorities.

Seeking to improve his life, Ward used a friend's address to enroll at a better school, West Springfield High School, and relied on various means of transportation to attend school. His true residency was soon discovered by administrators, and he was forced to leave West Springfield High School prior to completing the eleventh grade. He has since attempted to complete high school, but has ultimately failed to do so. Near his eighteenth birthday, Ward moved out of Mary Little's home and began to live with friends and acquaintances in the Springfield area. In July

2004, Ward moved in with Emilia Rodriguez, with whom he now shares a two-year-old child.

In May 2003, Ward was arrested by the Springfield Police Department on the drug charges that serve as the basis for the sentence enhancement Ward challenges in this appeal. Specifically, on the basis of separate incidents, Ward was charged with several counts of felony drug possession and distribution, three counts of drug violation near a school zone or park, and one count each of resisting arrest and refusing to identify oneself to the police. In February 2004, Ward and his attorney reached an agreement with the prosecutors to have the school zone drug violations nol prossed in return for Ward's plea of guilty to the remaining charges. The parties did not agree on any sentence recommendation to be offered to the court. Ward accepted the deal and pleaded guilty to the charges in the Springfield Division of the Massachusetts State District Court.

Prior to accepting Ward's plea, the court conducted a colloquy to determine whether his plea would be entered knowingly and voluntarily, and if there was a sufficient factual basis for the plea.

> Court: Okay Mr. Ward, how old are you sir?
> Ward:  Seventeen.
> Court: How far have you gone in school?
> Ward:  I'm in the eleventh grade.
> Court: Have you had any alcohol or drugs today that
>        would in any way interfere with your ability
>        to understand this matter?
> Ward:  No.

-4-

Court:  Do you suffer from any mental illness,
        disease or defect that would in any way
        interfere with your ability to understand
        this matter?

Ward:   No.

Court:  Do you understand that you're giving up your
        right to a trial by a jury?

Ward:   Yes.

Court:  You're giving up your right to confront and
        cross examine the witnesses against you and
        you're giving up the right against self-
        incrimination.    Do you understand those
        rights?

Ward:   Yes.

Court:  Do you understand that you're giving them up
        here today?

Ward:   Yes.

Court:  Do you understand that if you're not a
        citizen of the United States, conviction of
        this offense may have consequences with
        regard to deportation, exclusion from
        admission to the United States or denial of
        naturalization? Do you understand that sir?

Ward:   Yes.

Court:  In other words, if you're not a citizen. . .
        this only applies if you're not a citizen of
        the U.S., but it would affect your
        immigration, naturalization, and deportation
        status. Have you had enough time to discuss
        this matter with your attorney?

Ward:   Yes.

Court:  Has he explained to you the elements of the
        offense the Commonwealth has to prove
        against you?

Ward:   Yes.

Court:  Are you satisfied that he's given you his
        best professional advice?

Ward:   Yes.

Court:  There are not agreed recommendations; I'm
        free to impose whatever penalty I see fit.
        But if I should exceed the recommendation
        your attorney makes, this is what they were
        referring to earlier, I would allow you to
        withdraw your admission and go to trial in
        front of another judge or jury.  Do you
        understand that?

Ward:   Yes.

Per the court's request, Assistant District Attorney Leahy then summarized the facts in the police report. Upon completion of the recitation, the Court stated the following:

> Court: Mr. Ward, you're admitting to four counts of distribution of cocaine and one count of distribution of marijuana and one count of resisting arrest. Correct sir?
> West (Ward's attorney): I believe three counts of distribution of cocaine, Judge.
> Leahy: One was possession with intention to distribute cocaine.
> West: Possession with intent.
> Court: Okay, thank you. Is that what occurred sir on those respective dates?
> Ward: Yes.
> Court: I find that you freely, voluntarily, and willingly waived your rights and admitted to sufficient facts in the complaint.

Assistant District Attorney Leahy then gave the Court a summary of the facts in connection with a separate drug possession charge and various motor vehicle offenses. Upon completion of the recitation, the colloquy continued as follows:

> Court: Is that what occurred on that date sir?
> Ward: Yes.
> Court: On this matter I also find that you freely, voluntarily, and willingly waived your rights and admitted to sufficient facts.

The Court accepted Ward's plea and sentenced him to one year of probation.

In addition to and contemporaneously with the colloquy, Ward, Ward's attorney, and the sentencing judge signed a pre-printed waiver of rights in connection with the plea hearing. The document included the disposition of each crime charged against

-6-

Ward and language addressing the constitutional rights Ward waived by pleading guilty. Additionally, the waiver form included specific language concerning the voluntariness of the plea. The relevant portion of the form signed by Ward states:

My guilty plea or admission is not the result of force or threats. It is not the result of assurances or promises, other than any agreed-upon recommendation by the prosecution as set forth in Section I of this form. I have decided to plead guilty, or admit to sufficient facts, voluntarily and freely.

In addition, Ward's counsel certified on the form that he had explained to Ward the consequences of his waiver, "so as to enable the defendant to tender his or her plea of guilty or admission knowingly, intelligently and voluntarily." Lastly, the judge signed the waiver form, attesting that "after an oral colloquy with the defendant, . . . the defendant has knowingly, intelligently and voluntarily waived all of his or her rights as explained during these proceedings and as set forth in this form." The language of the waiver indicates that the judge signed the form at the completion of the plea proceeding, although it is unclear whether Ward and his attorney signed it prior to the proceeding or during it.

In July 2005, Ward was arrested for selling crack cocaine on several occasions to an undercover Massachusetts state trooper. A federal grand jury returned an indictment with two counts of possession with intent to distribute and distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1). In December

2005, the government filed an information under 21 U.S.C. § 851(a)(1), stating its intent to use Ward's prior state drug convictions to increase his punishment. Additionally, in March 2006, the government filed a superseding information, alleging additional charges against Ward. He pleaded guilty to all four counts in the superseding information.

In May 2006, prior to being sentenced on these federal charges, Ward filed a motion for a new trial in Springfield District Court on the 2003-2004 state charges,[2] claiming that the state trial court had failed to comply with Rule 12 of the Massachusetts Rules of Criminal Procedure and Massachusetts case law on the requirements for accepting a guilty plea.[3] Ward also alleged in an affidavit submitted to the Springfield District Court that he did not appreciate the consequences of his guilty plea, that the court did not explain to him the elements of the crimes to which he plead, and that neither the court nor his attorney did an adequate job of explaining his rights to him.[4] Ward likewise

---

[2] Under Massachusetts law, a motion for a new trial is the appropriate way to attack the validity of a guilty plea. E.g., Commonwealth v. Colon, 789 N.E.2d 566, 570 (Mass. 2003).

[3] Rule 12(c)(5) of the Massachusetts Rules of Criminal Procedure states that "[t]he judge shall conduct a hearing to determine the voluntariness of the plea or admission and the factual basis of the charge."

[4] Ward has not raised all of these concerns in this collateral proceeding. In fact, on appeal, he focuses only on deficiencies in the state court colloquy on the issue of voluntariness.

-8-

challenged in federal court the government's request for a sentence enhancement based on these prior state convictions.

On August 8, 2006, the state court denied Ward's motion and made no findings in support of its decision. The federal district court held a sentencing hearing after the state court's denial and concluded that the prior convictions were not impaired by any constitutional violation. The previous convictions triggered a mandatory minimum sentence under 21 U.S.C. § 841 (b)(1)(A) of 120 months. Because of U.S.S.G. § 5G1.1(b),[5] this mandatory minimum sentence also became the Guidelines sentence. Ward was sentenced to 120 months imprisonment on each count, to be served concurrently. If the enhanced minimum sentence had not applied, the Guidelines range, according to the PSR, would have been 57 to 71 months, and the mandatory minimum sentence would have been 60 months rather than 120 months. The court additionally sentenced Ward to eight years of supervised release.

Ward now appeals the sentence, asserting that the district court committed reversible error by denying his motion to exclude the prior state court convictions as the basis for a sentence enhancement pursuant to 21 U.S.C. § 851. Specifically, he contends that the state court record did not contain sufficient evidence to permit the district court to find that he entered his

---

[5] United States Sentencing Guidelines § 5G1.1(b) states that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."

guilty plea to the state charges voluntarily.[6]   Ward asks us to vacate his sentence and order his resentencing by the district court without consideration of the invalid state court convictions.

## II.

The federal enhancement statute upon which the government relied, 21 U.S.C. § 851, sets forth the procedures for using prior convictions as sentence enhancements.   The statute also permits defendants to contest the validity of a prior conviction to prevent it from serving as the basis for an enhanced sentence.   For constitutional challenges, a defendant must "file a written response to the information" that "set[s] forth his claim, and the factual basis therefor, with particularity . . . ."  Id. § 851(c)(1)-(2); see Custis v. United States, 511 U.S. 485, 491 (1994) (highlighting Congress's intent in 21 U.S.C. § 851(c) to allow challenges to the validity of a prior conviction used to enhance a federal drug offense sentence).   After receiving the defendant's response, the court "shall hold a hearing," at which either party may produce

---

[6] Although we acknowledge that the question of whether a guilty plea is voluntary may implicate the related questions of whether the defendant had knowledge of the crimes charged, the consequences of his plea, and the constitutional rights he was waiving, we define "voluntariness" for purposes of this opinion to include only the requirement that a plea be a free and deliberate act that is not compelled or induced by force, coercion, threats, or undue promises.   See Boykin, 395 U.S. at 243 (quoting McCarthy v. United States, 394 U.S. 459, 466 (1969)).   Also, both parties have conceded on appeal that other constitutional requirements apart from voluntariness so defined have been satisfied in this case.

evidence, "to determine any issues raised by the response which would except the person from increased punishment." 21 U.S.C. § 851(c)(1). For constitutional challenges, the defendant has the burden to prove all issues of fact raised by the response by a preponderance of the evidence. Id. § 851(c)(2).

Based solely on the state court record of the plea proceeding, with no additional evidence bearing on the voluntariness of Ward's plea offered by either party, the district court found that "the record from the transcript [was] more than adequate to support the voluntariness and all of the other criteria that is attached to a plea proceeding." We review this legal determination de novo.[7] See Marshall v. Lonberger, 459 U.S. 422, 431 (1983) ("[T]he governing standard as to whether a plea of guilty is voluntary for purposes of the federal Constitution is a question of federal law . . . and not a question of fact . . . ."); see also United States v. Walker, 160 F.3d 1078, 1095-96 (6th Cir. 1998) ("[T]he ultimate question whether a plea was voluntary requires a legal conclusion.").

### III.

In Boykin v. Alabama, an African-American defendant was indicted on five counts of common law robbery for a series of armed robberies that occurred in Mobile, Alabama. Three days after Boykin

---

[7] The district court engaged in no independent fact-finding in reaching its conclusion on the constitutionality of Ward's plea.

received appointed counsel, he was arraigned and pleaded guilty to all of the charges. He was sentenced to death on each of the counts. The record of the proceeding revealed that "the judge asked no questions of petitioner concerning his plea, and [the] petitioner did not address the court." Boykin, 395 U.S. at 239. On appeal from the Alabama Supreme Court, which had upheld on a 4-3 vote the constitutionality of defendant's plea, the United States Supreme Court reversed the decision and concluded that "[i]t was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary."[8]  Id. at 242.  The Court reached this decision despite petitioner Boykin's silence in front of the Alabama Supreme Court and in his petition and brief to the Supreme Court as to whether the plea was, in fact, unknowing and involuntary.  See id. at 246 (Harlan, J., dissenting) ("In [Boykin's] petition and brief in this Court, and in oral argument by counsel, petitioner has never asserted that the plea was coerced or made in ignorance of the consequences.").

With scant recognition of its dual audience, Boykin simultaneously speaks to judges who accept guilty pleas and judges who later review challenges to the constitutional adequacy of those

---

[8] To satisfy the requirements of due process, it has been long established that a guilty plea must in fact be knowing, intelligent, and voluntary. See, e.g., McCarthy, 394 U.S. at 466 ("[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.").

-12-

pleas, either on direct appeal or in collateral proceedings.[9]
Boykin reminds trial judges that a defendant's plea of guilty "must
be based on a 'reliable determination on the voluntariness issue
which satisfies the constitutional rights of the defendant.'" Id.
at 242 (quoting Denno, 378 U.S. at 387). Boykin reminds judges
reviewing challenges to the constitutional adequacy of a plea
proceeding that due process requires that the record of the
proceeding contain sufficient evidence to support the trial court's
decision to accept the plea.[10] Id. at 243 ("We cannot presume a
waiver . . . from a silent record."); see Brady v. United States,
397 U.S. 742, 747 n.4 (1970) ("The new element added in Boykin was
the requirement that the record must affirmatively disclose that a
defendant who pleaded guilty entered his plea understandingly and
voluntarily.").

        Given this new element, with its focus on the adequacy of
the record that memorializes the plea proceeding, the fact of
voluntariness cannot be inferred by a reviewing court from a silent

_____

[9] Boykin has been the subject of sharp criticism.  One judge
has noted that "[t]he Supreme Court's decision in Boykin v. Alabama
demonstrates the mess that can result from failure to identify the
holdings of a meandering opinion which makes assertions on
questions not before the court."  Pierre N. Leval, Judging Under
the Constitution: Dicta About Dicta, 81 N.Y.U. L. Rev. 1249, 1269
(2006).

[10] In reaching this conclusion, the Court extended to the
guilty plea setting its holding in Carnley v. Cochran, 369 U.S.
506, 516 (1962), that due process requires a record showing of
defendant's decision to waive his right to counsel.  See Boykin,
395 U.S. at 242.

-13-

or otherwise inadequate record. Instead, due process requires that there be an "affirmative showing" in the record to support that determination. Boykin, 395 U.S. at 242; see Hanson v. Phillips, 442 F.3d 789, 801 (2d Cir. 2006) ("It may well be that [the defendant], in fact, understood his alternatives, but we are unable to conclude so based on this record, and it is the trial court's responsibility to ensure 'a record adequate for any review that may be later sought.'" (quoting Boykin, 395 U.S. at 244)). Indeed, the Supreme Court highlighted in Boykin the importance of maintaining an adequate record for the appeals process. Id. at 244 ("When the judge [ensures a plea is knowing and voluntary], he leaves a record adequate for any review that may be later sought, and forestalls the spin-off of collateral proceedings that seek to probe murky memories.") (citations omitted).

Despite Boykin's requirement of an "affirmative showing" in the record that a plea was knowing and voluntary, Boykin does not address the contours of that showing. In arguing that the record of the state plea proceeding was inadequate, Ward takes his cue from Justice Harlan's dissent in Boykin. See 395 U.S. at 245 ("The Court thus in effect fastens upon the States, as a matter of federal constitutional law, the rigid prophylactic requirements of Rule 11 of the Federal Rules of Criminal Procedure."). He suggests that the contours of the Boykin showing are defined (that is, constitutionalized) by the requirements of Federal Rule of Criminal

-14-

Procedure 11.[11]  To this end, he cites the Supreme Court's decision
in McCarthy, which states that Rule 11's more strict colloquy
requirements can help "reduce the great waste of judicial resources
required to process the frivolous attacks on guilty plea convictions
that are encouraged, and are more difficult to dispose of, when the
original record is inadequate." 394 U.S. at 472.

Supreme Court decisions contemporaneous with Boykin
preclude any argument that Boykin constitutionalized Rule 11.  Two
months prior to Boykin, the Supreme Court stated that "the procedure
embodied in Rule 11 has not been held to be constitutionally
mandated." McCarthy, 394 U.S. at 465 (rejecting a guilty plea
because a district judge had failed to comply with the requirements

_____

[11] At the time Boykin was decided, Rule 11 consisted of four
sentences:

> A defendant may plead not guilty, guilty or, with the
> consent of the court, nolo contendere. The court may
> refuse to accept a plea of guilty, and shall not accept
> such plea or a plea of nolo contendere without first
> addressing the defendant personally and determining that
> the plea is made voluntarily with understanding of the
> nature of the charge and the consequences of the plea.
> If a defendant refuses to plead or if the court refuses
> to accept a plea of guilty or if a defendant corporation
> fails to appear, the court shall enter a plea of not
> guilty. The court shall not enter a judgment upon a plea
> of guilty unless it is satisfied that there is a factual
> basis for the plea.

Fed. R. Crim. P. 11.  Since 1969, Rule 11 has been amended on
numerous occasions, each time placing different or additional
obligations on the federal courts.  Most notably, the Rule was
amended in 1974 in response to the Boykin decision to require
courts to more specifically identify the constitutional rights that
are relinquished pursuant to a guilty plea.  Fed. R. Crim. P. 11
advisory committee's notes (1974 amendments).

-15-

of Fed. R. Crim. P. 11).[12]    The Court confirmed the non-constitutional nature of its holding in McCarthy one month later, noting that it was based "solely upon the application of Rule 11 and not upon constitutional grounds."  Halliday v. United States, 394 U.S. 831, 832 (1969).   In deciding not to impose the Rule 11 requirements retroactively, the Court in Halliday let stand a plea that we had ruled contained "'ample evidence' support[ing] the . . . finding that the Government had met its burden of demonstrating that petitioner entered his plea voluntarily with an understanding of the nature of the charges against him," even though the plea did not comply with Rule 11.  Id. at 832; see, e.g., Stewart v. Peters, 958 F.2d 1379, 1384 (7th Cir. 1992) ("The Constitution does not enact Rule 11 of the Federal Rules of Criminal Procedure . . . ."); Wade v. Coiner, 468 F.2d 1059, 1060 (4th Cir. 1972) ("[W]e do not find in Boykin v. Alabama . . . a rule fastening the 'rigid prophylactic requirements of Rule 11' of the Federal Rules of Criminal Procedure upon the states.").

---

[12] In McCarthy, the district court had failed to comply with the requirements of Fed. R. Crim. P. 11 by not "'first addressing [the defendant] . . . personally and determining that the plea [was] . . . made voluntarily with understanding of the nature of the charge . . . ,' and (2) . . . enter[ing] judgment without determining 'that there [was] . . . a factual basis for the plea.'" 394 U.S. at 462 (quoting Fed. R. Crim. P. 11).  Because of this deficiency, the Supreme Court held that the defendant was entitled to plead anew; the Court rejected the government's request that the case be remanded for an additional evidentiary hearing to show that McCarthy's plea was knowing and voluntary.  Id. at 464.

-16-

Even if <u>Boykin</u> did not constitutionalize Rule 11, it unmistakably held that a trial court must produce a record adequate for a reviewing court to conclude that the constitutional requirements of a plea have been met. See <u>Hanson</u>, 442 F.3d at 800 ("While we recognize that no particular form or script is required and that state courts have considerable leeway to establish a record in whatever reasonable manner they see fit, <u>Boykin</u> established that the record of a guilty plea must affirmatively disclose that the defendant made his plea intelligently and voluntarily."). Such a record may consist of a defendant's explicit answers during the plea colloquy to inquiries concerning the defendant's understanding of the nature of the charges, the consequences of pleading guilty to the charges, and the rights being waived. That plea colloquy might be supplemented by the completion of a printed waiver form that also addresses the constitutional elements of a plea. A specific script, a set of magic words, or even certain types of inquiries are not required.[13] See, e.g., <u>Siegel</u> v. <u>New York</u>, 691 F.2d 620, 626 (2d

[13] What <u>Boykin</u> requires is different in kind than what <u>Miranda</u> requires, although both serve similar prophylactic functions to protect constitutional rights. See <u>Adams</u> v. <u>Peterson</u>, 968 F.2d 835, 846 (9th Cir. 1992) (Kozinski, J., concurring) ("Like <u>Miranda</u> . . . , <u>Boykin</u> concentrates on providing additional, bright-line protection for enumerated constitutional guarantees -- namely, the rights to trial by jury, to confront one's accusers and to be free from compulsory self-incrimination -- and thereby travels one step beyond the specific requirements of the Constitution."). The protection <u>Boykin</u> offers, however, is less bright than that imposed by <u>Miranda</u>. Whereas <u>Miranda</u> requires a precise script to protect a defendant's right against self-incrimination, <u>Boykin</u> does not mandate that a judge adopt specific procedures to create an adequate record, or that the record contain specific, indispensable

-17-

Cir. 1982) ("Rather than mandating a specific catechism, in determining voluntariness and intelligence, due process requires only that the courts provide safeguards sufficient 'to insure the defendant what is reasonably due in the circumstances.'" (quoting Santobello v. New York, 404 U.S. 257, 262 (1971))); see also Leval, supra, at 1272 n.71 (citing numerous cases for the proposition that Boykin, despite language in the opinion, did not require an oral colloquy to explicitly demonstrate waiver of the three specific constitutional rights addressed in the opinion).

With this understanding of Boykin in mind, we assess whether the district court concluded correctly that the record of Ward's state court proceeding was "more than adequate to support" the finding that Ward entered his state plea voluntarily.

## IV.

In deciding whether there is an affirmative showing of voluntariness in the state court record of Ward's plea, we examine the totality of the circumstances surrounding the plea. Brady, 397 U.S. at 749 ("The voluntariness of Brady's plea can be determined only by considering all of the relevant circumstances surrounding it."). We are not limited to reviewing the transcript of the colloquy alone, as the district court appears to have done, but may also consider the other materials and documents that comprise the

elements. Boykin is satisfied so long as the record is sufficient to allow a reviewing court to conclude that the defendant's plea was constitutional.

-18-

record as a whole.   See United States v. Vonn, 535 U.S. 55, 74
(2002) (finding that a court is not limited to the record of the
plea proceeding in determining whether a Rule 11 violation affects
defendant's substantive rights); Hanson, 442 F.3d at 799 (making a
Boykin determination by examining "the record as a whole").

        The parties acknowledge on appeal that the state court
record supports a determination that Ward (1) had an understanding
of the charges against him; (2) was aware of the consequences of his
guilty plea; and (3) was competent to make such a plea.   They
contest, however, whether the state court record contains sufficient
evidence to permit the district court to find that he entered his
guilty plea to the state charges voluntarily, free of coercion,
force, threats, or undue promises.  Ward contends that the plea was
constitutionally deficient because the state court never inquired
generally whether his plea was a free and voluntary act, nor
specifically whether it was the product of coercion, undue promises,
or threats.  Additionally, he argues that neither the presence of
counsel on his behalf nor the signed waiver form remedy the
deficiencies in the plea colloquy.  Finally, he claims that his age
and unfamiliarity with the plea process provide additional support
for vacating the district court's sentencing decision, with its
reliance on the state court convictions.

        The government responds that the district court was
correct   to   reject   Ward's   claim   of   unconstitutionality.

-19-

Acknowledging that the state court failed to explicitly address in its colloquy whether Ward's plea was a free and voluntary act, the government nonetheless asserts that, based on the totality of the circumstances surrounding the plea, the record was sufficient to support the district court's voluntariness determination. Specifically, it argues that the text of the colloquy engaged in by the court and Ward, the presence of adequate counsel on Ward's behalf, and the written waiver signed by Ward, his attorney, and the presiding judge, offer adequate support for the district court's determination that the plea was entered voluntarily.

We agree with the government that the record supports the district court's inference that Ward's plea was freely and voluntarily entered. In reaching this conclusion, we rely on the waiver form signed by Ward contemporaneously with the plea proceeding, the factual circumstances surrounding the plea, the text of the colloquy itself, which contains no evidence suggesting that Ward's actions were the product of any force, coercion, undue promises, or threats, and Ward's failure to supply evidence of such influences to the district court, as he was entitled to do.[14]

---

[14] As set forth in 21 U.S.C. § 851(c), a defendant may offer evidence to challenge the constitutionality of a conviction invoked by the government to enhance a federal drug sentence. See, e.g., United States v. Jackson, 121 F.3d 316, 319 (7th Cir. 1997) ("[Section] 851 was enacted [] to insure that defendants are given reasonable notice and an opportunity to be heard, which includes the opportunity to contest the evidence or challenge a prior conviction if the defendant might be subject to a greater sentence than would otherwise be imposed.").

In the presence of the trial court and Ward's counsel, Ward signed a waiver form addressing his rights. The form stated that Ward's guilty plea "[was] not the result of force or threats . . . [nor] the result of assurances or promises, other than any agreed-upon recommendation by the prosecution." By signing the form, Ward also attested that he had "decided to plead guilty . . . voluntarily and freely." Given Ward's education level -- he was in eleventh grade at the time of the plea proceeding -- and ability to respond appropriately to the judge during the colloquy, there is no reason on this record to question his ability to understand the written waiver and the consequences of his decision to sign it.[15] The signature of Ward's counsel follows Ward's and affirms that he explained to Ward "his waiver of jury trial and other rights so as to enable [him] to tender his plea of guilty . . . knowingly, intelligently, and voluntarily." Finally, the trial judge's

---

[15] In his affidavit submitted to the Springfield District Court requesting a new trial, and in his response to the government's notice to pursue a penalty increase under 21 U.S.C. § 851(a)(1), Ward states that he did not appreciate the consequences of his guilty plea, and that the court did not explain to him the rights he was waiving by pleading guilty. Ward's own responses to explicit questions in the colloquy, however, contradict these assertions. When explicitly told by the state trial judge that he was giving up the right to a trial by jury, the right to confront and cross-examine witnesses and the right against self-incrimination, Ward responded that he understood those rights and that he was giving them up by pleading guilty. Ward has not submitted any other evidence in the course of these collateral proceedings to support his assertions that he did not understand the consequences of his guilty plea and the rights he was waiving. Indeed, on appeal, Ward has only contested whether the state court record is adequate to support the district court's determination that his plea was entered voluntarily.

-21-

signature attests that he found "after an oral colloquy with the defendant, that [Ward] has knowingly, intelligently, and voluntarily waived all of his rights as explained during [the plea] proceedings and as set forth in this form."[16]

The text of the plea proceeding offers additional support for our conclusion. The record of the plea does not suggest that Ward was impaired in any manner that would impede his ability to understand or respond to the questions posed by the judge. Ward did not hesitate when acknowledging the rights he was waiving or when admitting to the factual basis of the crimes he was charged with committing. He never asked the judge to repeat a question or statement. Also, Ward never halted the colloquy to pose a question to his attorney or seek his advice on any matter. Neither Ward nor his counsel objected or otherwise responded when the trial judge, on all charges, found that Ward had "freely, voluntarily, and willingly waived [his] rights and admitted to sufficient facts."

Ward cites his age and inexperience in the criminal justice system to support his claim that the plea colloquy was inadequate on the voluntariness issue. These factors would be more relevant if Ward was claiming that the plea colloquy was deficient in its explanation of the nature of the charges, the constitutional

---

[16] We do not suggest that a written waiver alone can take the place of a verbal colloquy between the court and a defendant. Additionally, some jurisdictions use more comprehensive waiver forms to assist them in satisfying the constitutional obligations, including requiring detailed and/or hand-written responses to questions posed. That seems a sensible practice.

rights being waived, or the consequences of the plea. Such explanations at the plea hearing itself are essential to a knowing plea. Age and inexperience seem less relevant to the issue of voluntariness in the absence of any evidence of external factors, such as force, coercion, threats, or undue promises. As we have indicated, the record of the state court proceeding does not suggest the presence of any such factors, and Ward did not introduce any evidence of such factors in this collateral proceeding. Also, so far as we can tell from this record, and as Ward acknowledged in the plea colloquy, Ward was represented by competent counsel throughout the state proceeding.[17] Such representation is an important factor in the voluntariness analysis, and it supports the district court's determination. See North Carolina v. Alford, 400 U.S. 25, 31 (1970) (noting that a plea is more likely the product of a free and rational choice where the defendant has the benefit of competent counsel); Sophanthavong v. Palmateer, 378 F.3d 859, 876 (9th Cir. 2004) (Ferguson, J., dissenting) (noting the heightened role competent counsel plays in the context of a juvenile making a plea).

---

[17] The Court asked Ward three questions regarding his counsel and their discussions. First, Ward was asked whether he "had enough time to discuss this matter with [his] attorney?" Next, he was asked whether his counsel "ha[d] explained to [him] the elements of the offense the Commonwealth ha[d] to prove against [him]?" Finally, the court asked Ward whether he was "satisfied that [his attorney] has given his best professional advice?" Ward answered "yes" to each of the questions.

-23-

**V.**

Boykin requires that the record of a guilty plea contain
an affirmative showing that there was a voluntary waiver by the
defendant of his constitutional rights. Although compliance with
a state version of Rule 11 in a state plea proceeding will almost
surely constitute such an affirmative showing, see Fed. R. Crim. P.
11, Boykin does not constitutionalize Rule 11 for state plea
proceedings. Moreover, although specific attention to the issue of
voluntariness in any plea proceeding is highly desirable, there is
no specific script that must be followed. Instead, in a collateral
proceeding under 21 U.S.C. § 851(c), where there is a constitutional
challenge to the voluntariness of a state court plea, the district
court can examine the totality of the circumstances surrounding the
plea.

Although the plea colloquy between the state trial court
and Ward did not contain specific questions addressing the voluntary
nature of Ward's plea, all of the relevant circumstances -- the
detailed colloquy between the court and Ward on issues other than
voluntariness, the clarity and directness of Ward's responses, the
involvement of effective counsel on Ward's behalf throughout the
proceedings, the written waiver signed by Ward, his counsel, and the
court, and the failure of Ward to produce any evidence of force,
coercion, threats, or undue promises -- convince us that the
district court ruled correctly that the state court record permits

-24-

an inference that Ward entered his guilty plea to the state charges voluntarily. Put another way, the record of the state proceedings includes the affirmative showing required by <u>Boykin</u> that Ward's plea was entered voluntarily. Given this showing, the district court was entitled to impose a sentence that included the statutory enhancement.

Affirmed.

**- Concurring Opinion Follows -**

**OBERDORFER, J., concurring.** The majority amply establishes that the state-court record affirmatively showed that Ward's plea entered here was voluntary and legal. I write simply to register my discomfort with the heavy sentences of imprisonment (most recently 10 years mandatory) beginning when he was a 17-year-old victim of a flagrantly poisonous environment. Hopefully, the efforts of insightful leaders such as the members of the bipartisan Commission on Safety and Abuse in America's Prisons (co-chaired by former United States Attorney General Nicholas de B. Katzenbach and the Honorable John Gibbons, former Chief Judge of the United States Court of Appeals for the Third Circuit), will lead to significant improvements in the federal prison environment, including physical, psychological and educational opportunities for young, disadvantaged inmates like Ward. *See* Commission on Safety and Abuse in America's Prisons, *Confronting Confinement*, at iii (2006) ("A year ago, a group of individuals with little in common promised to recommend strategies for operating correctional facilities that serve our country's best interests and reflect our highest values. Today, we speak in a single voice about the problems, our nation's ability to overcome them, and the risks for all of us if we fail to act."). Should these services materialize and bear fruit in Ward's case, it would behoove his counsel and his probation officer to pursue executive clemency for Ward before it is too late — if it is not already.